September 1, 1977

## 77–48 MEMORANDUM OPINION FOR THE GENERAL COUNSEL OF THE CENTRAL INTELLIGENCE AGENCY

### *Weissman* v. *Central Intelligence Agency*—District of Columbia Circuit—Effect of Decision

This is in response to your request for our opinion with respect to the consequences of the recent decision of the Court of Appeals for the District of Columbia Circuit in *Weissman* v. *Central Intelligence Agency*, 565 F. 2d 692 (D.C. Cir. 1977).[1] We understand that the decision has been made by the Solicitor General not to seek Supreme Court review in this instance. We have discussed with his office informally our general views on the *Weissman* case, but we were not directly involved in the consideration of the question whether this was an appropriate case in which to seek certiorari. The question that remains is whether, and to what extent, the *Weissman* case proscribes the activities of the Central Intelligence Agency (CIA). For the reasons that follow, we are unable at this juncture to provide your Agency with a definitive opinion on the scope and consequences of the D.C. Circuit's opinion. We are able, however, to suggest the considerations that ought to be applied by the CIA in developing procedures dealing with the types of activities potentially affected by *Weissman.*

The troublesome portion of the decision in *Weissman* is the court's treatment of the Government's claim that certain documents generated as part of an investigation of Mr. Weissman need not be disclosed to him by reason of exemption seven of the Freedom of Information Act. 5 U.S.C. § 552(b)(7). The district court had ruled that the CIA investigation fulfilled that exemption's requirement that the investigation be lawful, and that therefore the exemption protected the documents at issue from disclosure. The court of appeals held, however, that exemption seven was not available to the CIA for the sort of activity involved here, and remanded the case to the district court to determine

---

[1] This was an action under the Freedom of Information Act to compel the Central Intelligence Agency to turn over certain documents.

whether other exemptions could protect the documents against disclosure in the absence of that exemption.

The court's rationale is not clear. However, the ruling appears to be based on its belief that the investigative procedures used were not legally authorized where the target of those procedures was a United States citizen having no connection with the CIA. The court indicated its opinion as to the CIA's authority in this regard in several statements:

> [The proviso in 50 U.S.C. § 403(d)(3)] was intended, at the very least, to prohibit the CIA from conducting secret investigations of United States citizens, in this country, who have no connection with the Agency. 565 F. 2d at 695.

> [The responsibility of the Director of Central Intelligence to protect intelligence sources and methods] contains no grant of power to conduct security investigations of unwitting American citizens. *Id.* at 696.

> A full background check within the United States of a citizen who never had any relationship with the CIA is not authorized . . . . *Id.* at 696.

These three statements, apparently, form the basis of the court's ruling that exemption seven is not available.

Neither the above statements nor the rest of the court's opinion explain exactly what sorts of investigations the court believed were illegal; the court's opinion is ambiguous, for example, as to the scope of permissible investigations and the "connection" that the person under investigation must have with the CIA. In assessing the opinion, and in endeavoring to determine what restrictions it imposes upon the CIA, we believe that there are several factors that ought to be taken into consideration.

First, a restrictive interpretation of the court's language is justified in view of the context in which it was rendered. The opinion was rendered in a case involving the Freedom of Information Act, and not in an injunctive or declaratory action directly challenging the CIA's practices. The court was not presented with a full and direct briefing and consideration of the complex issues that must be evaluated in ascertaining the proper limitations on the CIA's substantive activities.

Second, this is the decision of only one court of appeals in a single case. The Government in other contexts has not always accorded final effect to the decisions of lower Federal courts. For instance, in the areas of tax and labor law, the Government frequently has pursued in one circuit a statutory interpretation at odds with pertinent rulings by courts in other circuits. Moreover, there is reason to believe that further elaboration of the court's view of the CIA's authority will be forthcoming in the not too distant future. As you know, the Government has now filed with the D.C. Circuit Court of Appeals its appellee brief in *Marks* v. *Central Intelligence Agency,* No. 77-1225. The Govern-

ment devotes considerable attention to a discussion of the potential sweep of the *Weissman* case, and it may well be that the court will take this opportunity to expand upon or clarify its views.

Additionally, we do believe that a substantial argument can be made that the case was decided wrongly. As you know, Exceutive Order 11905 3 CFR 90 (1976) prohibits foreign intelligence agencies from collecting information concerning the domestic activities of United States persons, except, among other things, for information collected to determine the suitability or credibility of persons who are reasonably believed to be potential sources or contacts. § 5(b)(7)(iii). *See also* § 4(b)(8). The court did not discuss this provision at all. Additionally, the Senate Select Committee to Study Intelligence Activities recognized that the CIA previously had conducted such investigations, and apparently did not object to them as violations of the CIA's charter legislation; in fact, the Committee recommended that the practice be allowed to continue. *See* S. Rep. No. 755, Book II, 94th Cong., 2d Sess., pp. 302–03 (1976). In a perplexing footnote, the court of appeals referred to that treatment of the question by the Committee, but it is unfortunately quite difficult to determine whether the reference was intended as a favorable comment upon the practice or as a simple statement of historical fact. *See, id.* at 696, fn. 8. We believe that given the court's ambiguous treatment of these important questions, we should be slow to adopt any interpretation of the court's language that would be at odds with these conclusions drawn, respectively, by the executive and legislative branches. Nonetheless, this is the only judicial interpretation and its import cannot be ignored.

With those considerations in mind, the following are our general comments about the meaning of the *Weissman* case:

1. Knowledge of the subject. Your letter to our Civil Division expresses a concern that the court's opinion might be read to require that the subject of any proposed investigation be "made aware of both the fact and the CIA sponsorship of the investigation." The Civil Division does not believe this to be the case, and neither do we. While the court at times refers to investigations of "unwitting" Americans, 565 F. 2d at 696, other statements in the opinion are not predicated on the factor that the investigation is unknown to the subject. *See, e.g., id.* at 695, 696. Rather, these statements find investigations unauthorized by reason of the lack of a "relationship" or "connection" with the CIA. While in many cases an individual will be aware of his relationship with the CIA, the lack of an explicit requirement to this effect in the court's opinion indicates that the court did not deem this to be an invariable prerequisite to an investigation.

2. Requisite connection with the CIA. The court made clear in several instances that the prohibition on CIA security investigations applied only to those "who have no connection with the

196

Agency" or "who never had any relationship with the CIA." This implies that the CIA might under appropriate circumstances conduct investigations of those who have some connection with the CIA; the opinion, however, does not specify what sorts of connections might justify a security investigation. While the end result makes clear that the CIA's unilateral, undisclosed interest, by itself, is not sufficient, much more than this may not be required to establish the requisite relationship. For example, all those performing work for or on behalf of the CIA might have a sufficient relationship with the Agency to justify a security investigation—even if they are unaware of CIA sponsorship or involvement. Individuals who consent to an investigation, in the hope of becoming an employee or asset, also would seem to have a connection with the Agency that would justify a security investigation.

3. Permissible scope of the investigation. The court at one point states that "a full background check" is not authorized; we do not believe, however, that this is the *only* type of investigation which is prohibited. The court at other points states that the CIA is barred from "secret investigations" or "surveillance and scrutiny" of United States citizens, and this would indicate that some initiatives less than a full background check are precluded. At the same time, we agree with the Civil Division that *all* such initiatives are not precluded. The court's references to a "full background check" (p. 696), to "surveillance and scrutiny," to a "Gestapo" and a "secret police," and to a prying "into the lives and thoughts of citizens" (p. 695), together with the context of the thorough investigation that the court assumed occurred in this case, suggest that the court was concerned about the more intrusive security checks. The court also emphasized the extensiveness of the investigation, pointing out that it spanned a "five year period." (p. 695). Additionally, in endeavoring to ascertain the limits of the court's opinion, the reference in footnote 8 deserves attention. In discussing the Committee's recommendations, the court pointed out that a line had there been drawn between investigations "through surveillance" and those, which the Committee approved, "to collect information through confidential interviews about 'individuals or organizations being considered by the CIA as potential sources of information . . . .' " 565 F. 2d 696, fn. 8.

4. The relationship between "connection and intrusiveness." It is clear that the court was concerned about investigations of those who have no "connection" with the CIA. It is also clear that the court was sensitive to the extensiveness and intrusiveness of such investigations. On the basis of the court's opinion, however, there simply is no definitive way to determine the precise relationship between those two factors. Plainly, an investigation that is as long-lived as was the *Weissman* investigation, and involves "detailed

background checks" of a person who is unaware that he is being considered by the CIA and who has no "connection" with the Agency, would be inconsistent with the decision. However, it is difficult to anticipate whether the *Weissman* case has any further reach. The opinion offers little guidance in interpreting the statutory limitations upon your Agency's activities.

Given this ambiguity, we would suggest that the most productive course might be for the CIA to draft procedures governing the types of activities that require it to conduct investigations of United States citizens within the United States who have no clear connection with the CIA. This Office would be happy to review those procedures and to cooperate with you in any other way we can.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*